Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 0815 | **DATE** | October 17, 2003 |
| **CASE TITLE** | *Sarmont v. Target Corporation* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] **prejudice** and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions for summary judgment [106], [112] are denied.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 20 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 131 |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | 2003 OCT 17 PM 3:50 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, ex rel. LELAND SARMONT, LELAND SARMONT, individually, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) Case No. 02 C 0815 |
| TARGET CORPORATION, et al., | ) Judge Blanche M. Manning |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Leland Sarmont brought this action under the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"), both in his individual capacity and as a *qui tam* relator on behalf of the United States, against defendants Target Corp., Motorola, Inc., and Target employees Tom Oxley, Carol Oxley, Ray Nofster, and Barbara Kipnis (collectively, "defendants"). Presently before the Court are defendants' two motions for summary judgment pursuant to Fed. R. Civ. P. 56(c) filed by Target and its employees and Motorola, respectively. For the reasons set forth below, both motions are denied.

## I. Background

Defendants' motions, styled as summary judgment pleadings, are something of a misnomer in that the merits of Sarmont's claims are irrelevant to the motions. Plainly, defendants contend that Sarmont's complaint must be dismissed, not because it presents no triable issue, but because of Sarmont's alleged delay in pursuing it. Indeed, defendants' motions only implicate this case's procedural history.

Nonetheless, a brief recital of the underlying facts is instructive.[1] Target is a small Illinois company which produced electronic components used by the United States military to emit "friend or foe" identification signals. In 1990, Sarmont, a Target employee, allegedly discovered that Target had substituted commercial parts for higher-quality military-grade parts, falsely certified that the parts met military specifications, and misrepresented to the government the costs of producing the components. Sarmont also learned that Motorola, a Target subcontractor, was not properly testing the components, and was also falsely certifying that commercial parts met military specifications.

Sarmont allegedly shared his findings with his superiors and was told that the irregularities he had discovered were under investigation, and further, that he should continue to ship the noncompliant products or risk losing his job. On October 4, 1990, Sarmont reported his alleged findings to the Naval Investigative Service ("NIS") and the Defense Criminal Investigative Service ("DCIS"). At the government's request, Sarmont began to cooperate with the investigation and even wore a "wire." Target terminated Sarmont on October 19, 1990.[2]

The Court now turns to the procedural history. On October 21, 1991, Sarmont filed this suit in the Central District of California. His complaint, brought pursuant to the FCA, enumerates the alleged false claims made by Target and Motorola, and also alleges that his termination was in retaliation for his "whistle-blowing." Pursuant to the FCA's requirements,

---

[1]Because the merits of Sarmont's complaint do not bear on the Court's resolution of defendants' motions, these facts are presented only by way of background and are not to be construed as containing findings of fact, or any comment, express of implied, on the complaint's merits.

[2]Not surprisingly, the parties differ on the reasons for Sarmont's termination (Target avers theft, while Sarmont alleges retaliation for whistle-blowing activities); again, it is of no moment to our analysis.

2

Sarmont filed the complaint under seal, and served a copy of the complaint and a disclosure statement on the United States Department of Justice ("DOJ"). *See* 31 U.S.C. § 3730(b)(2). Under the FCA, the government had sixty days to consider whether to intervene in the case. *Id.* However, the FCA allows the government to petition the court for an extension of the deadline upon a showing of good cause. *Id.* § 3730(b)(3). The case will proceed under seal until the government decides whether to intervene, at which point the complaint may be served upon the defendants. *Id.* § 3730(b)(2) & (3).

Shortly after Sarmont's complaint was filed, the United States Attorney for the Northern District of Illinois commenced a criminal investigation. This criminal investigation would last approximately seven years. The investigation included a grand-jury investigation during the intervening years 1994 and 1995. Throughout the seven-year period, the government sought, and the California court granted, fifteen separate extensions of the seal period. The nub of these requests was that the government needed more time to complete its criminal investigation before electing whether to intervene in the civil action.

During that time, both Target and Motorola, though not served with the complaint, were aware of the nature of the investigation. In November 1990, DCIS and NIS agents executed a search warrant at Target's premises and interviewed a number of Target employees including its president. In October 1990, DCIS agents interviewed Motorola's program manager of discrete military marketing, and on July 22, 1996, another Motorola employee was interviewed. Defense counsel were present at the interviews of Target and Motorola employees. Moreover, Target's counsel engaged in extensive negotiations with the U.S. Attorney's Office throughout the pendency of the criminal investigation.

As of February 1998, the DCIS was strongly recommending that criminal charges be filed against Target and its officers. On February 27, 1998, the government requested a partial lifting of the seal to allow it to confer with Target counsel regarding a possible settlement of the civil and criminal action against Target and its officers. The California court granted the request and partially lifted the seal for this limited purpose. No settlement ensued, and the seal remained in place.

In late summer 1998, Sarmont requested a status conference so "the government [could] more fully articulate a reasonable basis for seeking yet another extension." On September 2, 1998, the California court ordered a meeting and the submission of a joint status report by September 16. During a conference call with the government's attorneys, Sarmont learned that the government had decided not to pursue criminal charges, but needed more time to consider whether to intervene in his *qui tam* suit. Indeed, on August 28, 1998, Target had received an official declination letter from the DOJ declining all criminal prosecution. Based on the government's assurance that it would act with all deliberate speed in electing whether to intervene in the civil matter, Sarmont agreed to withdraw his opposition to further enlargement of the seal period.

In late 1998, Target received a letter from a DOJ Civil Division lawyer in Washington, D.C. indicating that the DOJ was reviewing the file for possible civil prosecution. This review spanned another 2½ years. On August 1, 2001, the DOJ's Civil Division attorneys filed with the California court its notice of election to not intervene. Accordingly, on August 17, 2001, the California court ordered that "the complaint be unsealed and served upon the defendant[s] by the relator."

Sometime during Summer 2001, Sarmont's California counsel informed Sarmont that he did not intend to pursue the case if the government did not intervene. Sarmont then contacted a Chicago lawyer on the advice of a neighbor and told the lawyer that he was a *qui tam* relator in a case pending in California, and further, that he was interested in transferring the case to Illinois. The Chicago lawyer told Sarmont that he had no experience in *qui tam* matters, but that he would help Sarmont find appropriate counsel in Chicago.

On September 30, 2001, California counsel notified Sarmont that he was withdrawing from the case. In a minute order dated November 27, 2001, the California court ordered that the complaint be served by December 27, 2001. Inexplicably, the November 27 order – the docket entry immediately following the August 17 order – was issued under seal. Sarmont's Chicago lawyer, on December 13, 2001, filed a motion in the California court to transfer the case to the Northern District of Illinois, and requested an extension of time to serve defendants while Sarmont found suitable Chicago counsel. On January 8, 2002, the California court granted both the transfer request and an extension until January 31, 2002 to serve defendants. The case was transferred, under seal, to the Northern District of Illinois.

In early January 2002, Sarmont retained his present Chicago counsel. Sarmont's new attorneys promptly prepared and attempted to file their appearances, but were notified by the Northern District's clerk's office that it would not accept any pleadings until the file arrived and the case had been assigned to a judge. Counsel was advised to call the clerk's office to monitor the file's arrival. The file arrived in the Northern District on February 1, 2002, and in late February, counsel were informed that the case had been assigned to this Court. On February 28, 2002, counsel filed their appearances and a motion to lift the seal to be presented on March 12, 2002. Miscommunication in the clerk's office resulted in the motion not being presented until

5

March 27, 2002, at which time this Court entered an order lifting the seal *nunc pro tunc* March 12, 2002. Sarmont served the complaint upon Motorola on April 29, 2002, and upon Target on April 30, 2002.

## II. Discussion

On this record, defendants proffer three arguments -- first, that Sarmont (along with the government) violated Fed. R. Civ. P. 41(b)'s requirement that a plaintiff prosecute his case with reasonable diligence; second, that Sarmont (along with the government) violated the FCA's seal provisions; and finally, that Sarmont's (and the government's) delay in prosecuting this case have violated defendants' due process rights. Each of these arguments, though framed under a distinct legal theory, emanates from the same premise. Namely, the 9½ year delay between Sarmont's filing of his complaint and defendants' receipt of service constitutes unreasonable foot-dragging that has prejudiced defendants.

### A. Rule 41(b)

Defendants argue that the government and Sarmont failed to prosecute their case as required under Fed.R.Civ.P. 41(b). Before evaluating the particulars of defendants' argument, the Court must address a prefatory matter which frames our analysis of *each* of defendant's arguments. Simply, while defendants lump the government and Sarmont together in its allegations of unreasonable delay, a brief recap of both the FCA's statutory framework and the procedural timeline in this case demonstrate that the Court must evaluate Sarmont's role in isolation from that of the government. The *qui tam* provisions of the FCA contemplate the following scenario: a relator files a complaint under seal and serves that complaint and a disclosure statement on the DOJ. The relator is then obligated to remain idle pending resolution

6

of the government's investigation and decision whether to intervene. *See Khan v. Chicago Housing Authority*, 2002 WL 849801, at *2 (N.D. Ill. 2002). The relator takes over only upon the government's decision not to intervene and the court's lifting of the seal. *See id.* Initially, the government is allowed sixty days to consider whether to intervene in the case. *See* 31 U.S.C. § 3730(b)(2). Unreasonable delay by the government in evaluating a *qui tam* action, and in seeking a corresponding extension of the seal period, is held in check by the FCA's requirement that a court grant a request for extension only upon a showing of good cause. *Id.* § 3730(b)(3).

On October 21, 1991, Sarmont, in compliance with the FCA, filed a complaint under seal, and served both the complaint and a disclosure statement on the DOJ; shortly thereafter, the United States Attorney's Office, aided by DCIS and NIS, commenced a criminal investigation, which included interviewing employees of both Motorola and Target; from the inception of its criminal investigation until its formal closing on August 28, 1998 – an investigation spanning almost seven years – the DOJ requested and received fifteen separate extensions of the seal upon its good cause showing that it needed more time to complete its criminal investigation; Sarmont fully cooperated with, and in some cases joined in, the government's extension requests; following the U.S. Attorney's decision to forego criminal prosecution, the DOJ's Civil Division in Washington D.C. deliberated, for close to three years, on whether to intervene in Sarmont's civil action; two more extensions later, the DOJ declined to intervene on August 1, 2001; Sarmont, then the only plaintiff, moved for a transfer to this District and for an extension of time to serve the complaint; after those motions were granted, the case arrived in this Court in February 2002, and on March 12, 2002, Sarmont moved to lift the seal; both defendants were served by April 30, 2002.

Mindful of the FCA's statutory design, the Court does not, as defendants suggest, merely lump together the conduct of the government and Sarmont. This timeline yields that Sarmont did not become master of his complaint until August 1, 2001. Prior to August 1, the government was conducting its criminal investigation and deciding whether to intervene in the civil action. Sarmont was not entitled to go it alone in the meantime – indeed, doing so is grounds for dismissal. *See Khan*, 2002 WL 849801, at *2. Thus, the Court rejects defendants' tacit argument that the pre-August 1, 2001 conduct of the government is attributable to Sarmont. This is not to say that Sarmont cannot be held to account for *his* conduct prior to August 1, only that the length of the government's investigation does not fall on his shoulders. With these principles in mind, the Court's analysis is brief.

Rule 41(b) provides that a lawsuit can be involuntarily dismissed "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court. . . ." Fed.R.Civ.P. 41(b). The Seventh Circuit has cautioned that "[i]n the normal course of events, justice is dispensed by the hearing of cases on their merits; only when the interests of justice are best served by dismissal can this harsh sanction be consonant with the role of the courts." *Schilling v. Walworth County Park and Planning Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986) (citation omitted). Thus, a sanction of dismissal usually is appropriate only in "extreme situations" in which plaintiff has exhibited "a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Id.* A dismissal is the "ultimate sanction" and is "reserved for cases in which the offending party has demonstrated willfulness, bad faith, or fault." *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000) (citation omitted).

Defendants make much of the fact that Sarmont joined in multiple requests for

extension of the seal deadline. The Court does not glean from this a bad-faith "failure to prosecute" by Sarmont. Rather, Sarmont's lengthy cooperation merely reflects his all-too-rational desire to have the government on board in prosecuting his claim. In fact, the evidence shows that in the later stages of the investigation, Sarmont prodded the government to complete their investigation and only reluctantly, on the government's assurances of due diligence, joined in the final motions to extend the seal period.

Likewise, although Sarmont's prosecution of his claim since August 1, 2001 has not been a model of expediency, the Court is not persuaded that Sarmont ignored any court orders or that his lumbering was borne out of "willfulness, bad faith or fault." *Id.* Accordingly, defendants' Rule 41 argument must fail.

### B. The FCA's Seal Provision

Defendants argue that Sarmont and the government did not make a good cause showing under section 3730(b)(3) for extending the seal period. While the Court understands that it is commonplace to defer a civil investigation and the intervention decision pending completion of a U.S. Attorney's criminal investigation, the passing of almost a decade between the filing and service of the complaint, facilitated largely by extensions of the seal period, does give the Court pause. Length of the investigation alone, however, does not raise a specter of bad faith with respect to the government's conduct. *See, e.g., United States v. Davis*, 231 F.Supp.2d 701, 708 (S.D. Ohio 2002). And defendants proffer nothing more than its opaque "look how long this took" arguments, which do not suggest the absence of good cause, let alone overcome the presumption of validity accorded to the California court's rulings. *See White v. Godinez*, 301 F.3d 796, 803 (7th Cir. 2002) ("[U]nder the law of the case doctrine, we do not reopen issues

9

decided in earlier stages of the same litigation unless we have strong conviction that the earlier ruling was wrong and the party that benefitted from the earlier ruling would not be unduly harmed.") (citation omitted).

The Court's own review of the record reveals several factors which appear to have contributed to the prolonged investigation. First, in late 1993, the Assistant U.S. Attorney assigned to the prosecution of the case left the government, and a new prosecutor was assigned. Second, Target's counsel was heavily engaged in discussions with the U.S. Attorney's Office. The parties' characterization of these efforts differ markedly. DCIS reports suggest that Target's vigorous lobbying efforts "stymied prosecution efforts." For instance, during the government's presentation to the grand jury, proceedings were interrupted, on Target's request, to allow discussions on the issue of criminal liability. During these discussions, Target counsel urged an agreement to toll the criminal statute of limitations. According to DCIS, Target's counsel requested, and received, a tolling of the criminal statute of limitations on thirteen separate occasions to allow counsel to continue to meet with the U.S. Attorney's office to "discuss potential resolution of the case" or to review government reports. Against this summary, Target credibly submits that its interaction with the U.S. Attorney's Office was nothing more than the typical negotiating (ultimately successful) for a declination of prosecution. In any event, the parties have presented nothing which suggests that the investigative delay in this case, while undeniably significant, was due to the bad faith of *any* party.

Absent any showing that the government did not, in fact, have good cause to seek an extension of the seal period, the Court declines to revisit the California court's rulings.[3]

---

[3]To put the California court's rulings in context, substantial extensions of the seal period are not uncommon in *qui tam* cases. *See, e.g.,* **United States ex rel. Alderson v. Quorum Health**

10

## C. Due Process

Finally, Motorola argues that this case's delay has infringed on its due process rights secured by the Fifth Amendment. However, our finding that Sarmont's complaint is now properly before this Court, *i.e.*, it would survive a statute of limitations challenge, gives Motorola a slender reed upon which to rest a due process argument premised on delay. "[I]f courts could conclude that a mere temporal delay were enough to give rise to a deprivation of due process even where the statutory period of limitations had not run, it would be tantamount to a judicial override of legislative prerogative." *Davis*, 231 F.Supp.2d at 707; *see also United States v. Lovasco*, 431 U.S. 783, 789 (1977) ("[T]he Due Process Clause has a limited role to play in protecting against oppressive delay.")

To show a due process violation when an action was timely filed, a defendant must demonstrate that the government intentionally delayed to gain a tactical advantage and that actual prejudice resulted. *United States v. Marion*, 404 U.S. 307, 324 (1971). As to the first prong, although the Court has little trouble finding measurable delay, the Court finds no evidence that such delay was deliberately undertaken to acquire a tactical advantage. The Supreme Court's treatment in *Lovasco* is on point:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function.

---

*Group*, 171 F.Supp.2d 1323, 1325 (M.D. Fla. 2001) (seal in place for six years); *United States ex rel. Franklin v. Parke-Davis*, 147 F.Supp.2d 39, 43 (D. Mass. 2001) (seal in place for almost four years).

11

431 U.S. at 790 (*citing Rochin v. California*, 342 U.S. 165, 170 (1952)).

On the prejudice showing, a claim of prejudice must be "specific, concrete and supported by evidence." *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir. 1994). Here, Motorola submits that its record destruction policy likely led to the destruction of exculpatory evidence during the course of the criminal investigation, that witnesses no longer employed by Motorola may not be available to testify, and that it was not given adequate notice of the suit in order to prepare a defense. First, Motorola's arguments regarding document retention and witness availability are, at this time, entirely speculative. *See Lovasco*, 431 U.S. at 790. Second, Motorola cannot now be heard to complain that it had no notice of the pendency of a criminal investigation. It has had notice from its inception through interviews conducted in both 1990 and 1996 in the presence of Motorola counsel. Motorola's argument that, despite its knowledge of a criminal investigation into circumstances surrounding military contracts for which it was directly or indirectly involved, it did not know that *it* could face liability is specious.

This leaves us with Motorola's argument that is has been prejudiced by the mere passage of time. However, just as lengthy pre-indictment delays do not bar criminal prosecution (*see Aleman v. Judges of Cook County*, 138 F.3d 302, 309 (7th Cir. 1998) (twenty year delay); *United States v. Mmahat*, 106 F.3d 89, 93 (5th Cir. 1997) (nine year delay); *United States v. Edwards*, 159 F.3d 1117, 1128 (8th Cir. 1998) (same); *United States v. McMutuary*, 217 F.3d 477, 482 (7th Cir. 2000) (five year delay)), here too, the government's delay does not foreclose Sarmont's civil suit. Indeed, although 9 ½ years will take its toll on the freshness of any party's evidentiary arsenal, such is expressly contemplated by the FCA which itself contains a ten year statute of limitations. *See* 31 U.S.C. § 3731. Defendants have not made the requisite showing to support a due process violation.

## III. Conclusion

In sum, while defendants' objections to being haled into court almost a decade after the filing of the complaint do not fall upon deaf ears, Sarmont's right to have his suit heard on the merits cannot be foreclosed by the government's facially legitimate, albeit glacial, investigative process. Accordingly, defendants' motions for summary judgment [106], [112] are denied.

ENTER:

*Blanche M. Manning*

**Blanche M. Manning**
**United States District Court Judge**

DATE: 10-17-03